UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| La'Quan Woodson, | ) | CASE NO. 3:14cv0076 |
| | ) | |
| Plaintiff, | ) | Judge Jeffrey J. Helmick |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | & ORDER |
| Gary C. Mohr, et al., | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff La'Quan Woodson filed the above-captioned *in forma pauperis* Complaint against Ohio Department of Corrections Director Gary Mohr, Toledo Correctional Institution (TCI) Warden Edward Shelton, TCI Major G. Parker, TCI Institutional Inspector S. Brown and TCI Correctional Officer Danhoff. Plaintiff, who was incarcerated at TCI at the time he filed this action, alleges the defendants deprived him of his civil rights under color of law in violation of 42 U.S.C. § 1983.[1] He seeks compensatory and punitive damages.

**I. Background**

Plaintiff was assaulted by a fellow inmate on April 12, 2013. The incident took place after an inmate ran into Plaintiff's cell and struck him several times in the head with a "lock in a sock." (Doc.

---

[1] Plaintiff was recently transferred to Allen Correctional Institution.

No. 1-1 at 3.) He describes the assault as a botched robbery attempt. The attack prompted TCI to issue a "Man Down Alarm," which brought Danhoff to Plaintiff's cell.

Plaintiff was handcuffed behind his back and subdued when Danhoff "attacked the plaintiff for no reason given nor understood other than sadistic pleasure." *Id.* While en route to seek medical care, Danhoff slammed Plaintiff into the wall of the elevator and placed him a headlock. Plaintiff alleges Danhoff shouted an expletive at him to stop talking, when Plaintiff asked why he was being shoved.

Following his medical examination, Plaintiff was placed in the segregation unit to await a hearing before the Rules Infraction Board (R.I.B.). Inspector Hobbs later informed the RIB panel that Plaintiff had been assaulted.

The R.I.B. did not assign any guilt to the Plaintiff. He complains, however, that he remained in segregation beyond the Institution's requisite 21-day investigation period. When he asked Major Parker why he was being held more than 21 days, the defendant allegedly stated he was not going to permit "a piece of **** inmate to ruin his officer." (Doc. No. 1-1 at 4.)

"Upon information and behalf [sic]," Plaintiff believes the defendants conspired to hold him in segregation until his wounds healed, so that no photographic evidence could corroborate the extent of his physical injuries. While he does not detail the exact length of his placement, he does state he "served over thirty (30) days in segregation." *Id.* Plaintiff argues this period of detention violated his right to due process, institutional policy, and basic human rights.

Sometime after his release from segregation, "C.O. Danhoff was later charged and indicted for the assault of the plaintiff." *Id.* He now asserts the officer used excessive force in violation of the Eighth Amendment to the Constitution. The attacks left Plaintiff with bruises, scratches, a concussion and wounds that required at least five stitches. Since the incident, he claims he suffers from headaches, back spasms, various psychological injuries and has been traumatized.

2

## II. Initial Review

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A district court is required to dismiss a claim under 28 U.S.C. § 1915(e), however, if it fails to state a basis upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).

## III. 42 U.S.C. § 1983

To prevail in a civil rights action under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived him or her of a right secured by the Constitution and law of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 alone creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). The statute applies only if there is a deprivation of a constitutional right. *See e.g., Paul v. Davis*, 424 U.S. 693, 699-701(1976); *Baker*, 443 U.S. at 146-47. Here, Plaintiff alleges the Defendants violated his rights under the Eighth Amendment when Danhoff physically attacked him without provocation or justification. He also alleges he was denied due process when he was held in segregation after his RIB hearing and beyond the standard 28-day period.

While Plaintiff may have raised a colorable claim of excessive force in violation of the Eighth Amendment against Danhoff and Parker, he has failed to sustain a claim against Gary Mohr, Warden Edward Shelton, or Inspector S. Brown. Moreover, Plaintiff has failed to state any claim for relief based on a violation of the Due Process Clause.

A. *Respondeat Superior*

*Respondeat superior* is not a proper basis for liability under § 1983. *Leary v. Daeschner*, 349 F.3d

3

888, 903 (6th Cir. 2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984). A supervisor's liability cannot be based solely on the right to control employees, nor "simple awareness of employees' misconduct." *Leary*, 349 F.3d at 903; *Bellamy*, 729 F.2d at 421. Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays*, 668 F.2d at 874).

A careful reading of the Complaint does not reveal that either Mohr or Shelton acquiesced or encouraged Danhoff to commit unconstitutional acts. The fact that Danhoff was later charged and indicted with assaulting Plaintiff only underscores the appearance that Plaintiff's complaints regarding the officer's behavior were not disregarded as a matter of policy.

B. Qualified immunity

Plaintiff describes defendant Brown as being "responsible for the complaints inmates may have concerning staff or policy changes at Toledo Correctional Institution." (Doc. No. 1-1 at 2.) He also describes her as the liaison between inmates and staff. It appears Plaintiff has named her as a defendant based solely on her job description, however. His Complaint simply levels generic allegations that she "refused to acknowledge the plaintiff's basic constitutional rights." (Doc. No. 1-1 at 4.) Not only has Plaintiff failed to allege Brown personally engaged in unconstitutional behavior, but he cannot overcome the fact she is entitled to qualified immunity.

Qualified immunity is an affirmative defense that must be pleaded by the defendant official. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Although it is not customary to raise an affirmative defense *sua sponte*, if the defense is obvious from the face of the complaint, it is not inappropriate. *See*

4

*Haskell v. Washington Township*, 864 F.2d 1266, 1273 (6th Cir. 1988); *Yellen v. Cooper*, 828 F.2d 1471, 1475-76 (10th Cir. 1987).  Under this judicially-created exception, government officials are immune from civil liability when acting in an official capacity if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818.  To determine whether a government official is entitled to the defense of qualified immunity, a court looks to: (1) whether the plaintiff has shown a violation of a constitutionally protected right; and, if so, (2) whether that right was clearly established such that a reasonable official would have understood that his behavior violated that right. *See Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998).

While Plaintiff accuses Brown of practicing "the three (3) D's Deny, Delay, Dismiss," he fails to articulate how her behavior violated his right to protection under the Constitution. Without first showing that she has violated a specific Constitutional right, Plaintiff cannot sue her for money damages under the Civil Rights Act.

C. Due Process

Plaintiff argues he was denied a liberty interest without a hearing in violation of the Due Process Clause.  Under the Fourteenth Amendment, a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The question of what process is due, however, can only be addressed if the inmate establishes he or she was deprived of a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). When the state acts within the terms of the sentence imposed, the Due Process Clause does not confer a liberty interest in freedom from that action.  *Sandin*, 515 U.S. at 480. "Discipline by prison officials

5

in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to *more adverse conditions of confinement.*" *Wilkinson*, 545 U.S. at 221 (emphasis added).

It is apparent Plaintiff believes any additional time he spent in segregation entitled him to full due process protection. Unless a prisoner's placement in disciplinary confinement is accompanied by the withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case. *Sandin*, 515 U.S. at 484.

Because Plaintiff does not specify the length of time he remained in segregation, I can only assume the period did not exceed 40 days, or he would have stated that fact in his Complaint. Instead, Plaintiff argues he was held more than 30 days or at least two days beyond the standard 28 days a prisoner is customarily held in segregation pending an investigation. Since Plaintiff had an R.I.B. hearing during the 28-day period, his due process claim must be restricted to the number of days he was held in segregation beyond the 28-day period.

Without an allegation that Plaintiff was sanctioned with the loss of good time credits, he has no liberty interest in the few days he was detained in segregation beyond the 28th day. There is abundant case law that suggests Plaintiff's placement in segregation for two to twelve days beyond the customary detention period did not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see, e.g., Iqbal v. Hasty*, 490 F.3d 143, 161 (2d Cir. 2007) (noting that "[r]elevant factors" in determining whether a liberty interest is implicated "include both the conditions of segregation and its duration" and holding that "[s]egregation of longer than 305 days ... is sufficiently atypical to require procedural due process protection under *Sandin* "); *Skinner v. Cunningham*, 430 F.3d 483, 487 (1st Cir. 2005) (holding that a

6

liberty interest was not implicated because, among other reasons, the duration of the plaintiff's segregation "was not excessive"); *Stephens v. Cottey*, 145 Fed. Appx. 179, 181 (7th Cir. Aug.17, 2005) ("In determining whether prison conditions meet this [ *Sandin* ] standard, courts place a premium on the duration of the deprivation...."); *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (noting that a relevant factor is "the duration of the condition"); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (noting that a relevant factor is "the amount of time the prisoner was placed into disciplinary segregation" and stating that "we have no difficulty concluding that eight years in administrative custody ... is 'atypical' [and significant] in relation to the ordinary incidents of prison life"); *Hatch v. District of Columbia*, 184 F.3d 846, 858 (D.C. Cir. 1999) (remanding case and noting that, "even if the conditions [the inmate] faced were no more restrictive than ordinary conditions of administrative segregation, the district court should determine whether its duration-twenty-nine weeks ...-was 'atypical' compared to the length of administrative segregation routinely imposed on similarly situated prisoners"); *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999) (remanding case for district court to consider "both the duration and degree of plaintiff's restrictions as compared with other inmates"). Without establishing a liberty interest in the period within which he was held in segregation, Plaintiff has failed to state a violation of his right to due process.

### IV. Conclusion

For the foregoing reasons, Plaintiff's Due Process Claim under the Fourteenth Amendment is dismissed pursuant to 28 U.S.C. § 1915(e). Moreover, he has failed to state claims against defendants Gary Mohr, Edward Shelton, or S. Brown based on Excessive Force in violation of the Eighth Amendment, and these defendants are dismissed from this action pursuant to 28 U.S.C. § 1915(e). As to his remaining Eighth Amendment claims against Parker and Danhoff, the Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process. The Clerk's Office shall include a copy of this order in the documents to be served upon the

Defendants. I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

**So Ordered.**

s/Jeffrey J. Helmick

*United States District Judge*

---

[2] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."